UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | CAUSE NO. 3:07-CR-115(01) RM |
| | ) | |
| WILLARD KING | ) | |

OPINION AND ORDER

Willard King pleaded guilty on June 12, 2008 to a charge of distributing cocaine. Sentencing was set for November 5, 2008, reset on Mr. King's motion to November 25, reset again on Mr. King's motion to January 27, 2009, then reset on the government's motion to February 20, 2009. The parties informed the court that they would need two hours for the February 20 sentencing hearing.

On February 20, a suppression hearing in a case with a pending trial date required more time than the court expected. The parties to this case reported that they had been trying diligently to resolve various factual issues but had been unsuccessful. When asked how long they would need, the defense reported that a full day would be needed. The court reset the sentencing for the full day of March 20.

The court invited no opening remarks at that sentencing hearing because Mr. King's counsel had arrived quite late (for which he apologized) and a government witness had a plane to catch. Eventually, though, as the court and the government struggled to perceive relevance in the defense cross-examination, the court inquired as to the parties' positions. It turned out that the defense

position was quite different than what was set forth in its objections to the presence report.

According to the government, Mr. King told investigators that he had dealt 200 to 300 kilograms of powder cocaine that he acquired from a dealer named Leno. The investigators set Mr. King up through the assistance of an informant who told investigators he had purchased twenty to thirty kilograms of powder cocaine from Mr. King down through the years. When investigators arrested Leno — known more formally as Eleno Meraz — Mr. Meraz told investigators that he had previously sold Mr. King thirty to forty kilograms of powder cocaine.

The court understood Mr. King's objection to the presence report to be this: all information about Mr. King's uncharged dealings flowed from his own statements to the investigators, and so couldn't be used to enhance his offense level. U.S.S.G. § 1B1.8. The government responded that Mr. King's proffer wasn't used in questioning either the informant or Mr. Meraz, so its information about uncharged dealing was independent of Mr. King's proffer.

At the March 20 sentencing hearing, however, Mr. King denied telling investigators he had acquired 200-300 kilograms of powder cocaine from Mr. Meraz and (as the court understands it) denied having the prior dealings that Mr. Meraz and the informant described. Accordingly, Mr. King explained, he needed to attack the credibility of the informant and Mr. Meraz — a far more time-consuming matter, it turned out, than simply tracing the genealogy of the government's relevant conduct estimate.

2

When it became apparent that the evidence wouldn't be completed on March 20, the court informed the parties that it would set aside another half day for the sentencing hearing, but no more. Neither side suggested that the additional time would be insufficient. More than once on March 20, the court urged greater focus in cross-examination in light of the limited time.

The sentencing hearing resumed on April 22. As had been true on March 20, the lion's share of the time was devoted to cross-examination of the government's witnesses. The government spent a total of twenty-seven minutes examining witnesses on April 22. At several points, the court reminded counsel of the need to complete the evidence by the close of the day. More than once, when inviting responses to the government's relevancy objections, the court asked defense counsel if he expected to complete the evidence that day, and counsel responded in the affirmative. Based on those assurances, the court gave the defense considerably more latitude in cross than it otherwise would have given.

With all that had gone before, the court was surprised when the defense called Mr. King as a witness at 4:54 p.m. The government informed the court that it wanted time to conduct a cross-examination, and the court responded that if time were insufficient, the government could move to strike Mr. King's direct examination testimony. The court assumed Mr. King was taking the stand simply to deny telling the investigators he had purchased 200-300 kilograms of cocaine from Mr. Meraz. The court was wrong. In his brief time on the witness stand, Mr. King testified about events in the early 1990s and in 2004.

3

The court excused Mr. King from the stand a few minutes after 5:00 p.m. Mr. King's counsel objected, saying the court was denying Mr. King his due process right to a sentencing hearing. When pressed as to how much time would be needed to provide the sentencing hearing Mr. King believed was due him, counsel replied that another full day would be needed. The court recessed for the day, taking under advisement Mr. King's objection to the termination of the testimonial portion of the hearing.

Enforcing a day-and-a-half time limit on testimony is no denial of due process in this case. The court afforded half again as much time as the parties requested, allowed the defense to present theories not raised in compliance with the time limits established by Federal Rule of Criminal Procedure 32(f)(1), and allowed cross-examination of skimpy probative value. Even after a day-and-a-half of testimony, for example, the court is unable to detect the importance of the events of August 17-18, 2004 on the relevant conduct issue to be resolved here. The defense chose to use time to try to impeach the informant on such things as whether the informant had dinner with the defendant's wife and her family the night after she graduated from high school — an event that seems to have taken place more than a decade and a half ago. Given the erosive nature of the impeachment and evidence to date, the court sees no incremental benefit in expanding the hearing beyond the time the defense requested.

The government presented the informant for direct and cross-examination. The court ordered Mr. Meraz to be produced so that Mr. King could call him as a

witness, though Mr. King devoted his efforts in questioning other witnesses. Accordingly, unlike in most federal sentencings, Mr. King had the opportunity to confront and cross-examine both of the people whose statements formed the basis of the alleged drug quantity.

That Mr. King was on the stand and barely into his own testimony when this issue arose gives the court pause in enforcing the deadline. This sentencing judge has never forbidden a defendant from testifying in his own sentencing hearing and doing so admittedly generally would be distasteful. But the interruption of Mr. King's testimony didn't occur in a vacuum. Considerable time was wasted before the defense chose to put Mr. King on the stand, time spent on matters of minuscule importance, usually after personal consultation between Mr. King and his counsel.

It is tempting to re-open the testimony for a limited, specific period so that Mr. King may testify and be cross-examined. But no limit makes sense in light of the case's history. Two limits have been tried thus far without meaningful effect. No reason comes to mind why a limit of another hour for the defendant's direct testimony would be any more enforceable, consistent with due process, than the limits already tried with ample notice to both sides.

The only alternative view would seem to be that a defendant has a due process right to engage in a sentencing hearing until the defendant himself is satisfied that he has been heard. But no legal principle of which the court is aware

delegates responsibility for the court's docket to a defendant about to be sentenced. A defendant must receive the process that is due, not endless process.

The court is unpersuaded that a defendant is deprived of due process when he has been given half again as much time as he requested, has been notified of the time limit a month in advance of the last part of the hearing, has been given the opportunity to confront and cross-examine both confederates upon whom the government relies, was afforded extraordinary latitude in that cross-examination because of the court's assumption that the defense was acting consistently with the allotted time, and has been allowed to explore theories not suggested by his objections to the presentence report.

The court overrules Mr. King's objection to the termination of the testimonial portion of the sentencing hearing. Recognizing the importance of the defendant's opportunity to be heard, Mr. King may, if he wishes, submit a written proffer, not to exceed five pages, setting forth what his remaining evidence would have been, by May 14, 2009. The government may then submit a written counter-proffer, not to exceed five pages, by May 28, 2009. That will complete the evidentiary portion of the sentencing hearing. The case will be scheduled in a separate order for argument and sentencing.

SO ORDERED.

ENTERED:  April 30, 2009

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court